The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar. As the appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives, the Full Commission affirms with minor modifications the Opinion and Award of the Deputy Commissioner as follows:
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Zurich-American Insurance Company was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. I.C. File 633309, including the medical records and the Compromise Settlement Agreement, are a part of the evidence herein.
5. Plaintiff worked an average of 24.5 hours per week for the period from 17 December 1996 until 21 January 1997. He was paid $6.00 per hour, which yields an average weekly wage was $147.00, and a compensation rate of $98.00 per week.
6. The issue for determination is whether plaintiff sustained an injury by accident or as a result of a specific traumatic incident of the work assigned on 21 January 1997, and if so, to what benefits is he entitled under the Act.
7. The parties stipulated six pages of medical reports from Columbia Davis Medical Center and eight pages of medical reports from Salem Orthopedic Sports Medicine into the record at the hearing.
***********
Based upon all of the competent evidence adduced from the record, and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a thirty-eight year old high school educated male. He was hired at Ablest Services Corporation, a temporary employment service, on 16 December 1996, and was assigned to report for work at Achieva in Mocksville on 17 December 1996. Plaintiff's duties included affixing U.P.C. labels to shipping boxes which were stacked on pallets in the warehouse. The pallets contained boxes of bookcases. Plaintiff also packed shelves, ran a strapping machine, closed boxes, and pushed items on a conveyor.
2. Beginning in April 1991, plaintiff sustained several injuries to his neck and back. On 19 April 1991, plaintiff injured his back and neck lifting a one hundred pound bag of flour while working in food service in Honolulu, Hawaii. Plaintiff received chiropractic treatment for this injury from Scott Farrier, D.C.
3. Plaintiff next injured his neck, back, and shoulder on 15 September 1991 while delivering a refrigerator. These injuries also required medical and chiropractic care.
4. On 10 March 1992, plaintiff injured his neck and back while moving a two hundred pound cabinet at his job. He received medical treatment from Dr. Juris Burgmanis and Dr. Maxwell Urata, where physical therapy was ordered. Diagnostic studies revealed a disc herniation at L5-S1 and a mild disc protrusion at L4-5.
5. In May 1993, plaintiff entered into workers' compensation settlements for the three workers' compensation injuries he had sustained in 1991 and 1992 in Hawaii.
6. Plaintiff moved to North Carolina in November 1994.
7. On 3 March 1995, plaintiff sustained a neck injury as a result of an automobile accident. Plaintiff's vehicle was struck by another motorist in a sleet storm, and he was injured when he jerked to his right side in an effort to protect his child in the collision. Plaintiff sought treatment at Rowan Memorial Hospital for right side and upper and lower back pain.
8. Plaintiff began receiving chiropractic treatment from Susan Sykes, D.C. He underwent an MRI in June 1995 as ordered by neurologist Dr. William McKinney, which revealed joint degeneration, spondylosis and disc bulges in the cervical spine. It also indicated a herniated nucleus pulposus on the right at L4-5 and a right paracentral herniated nucleus pulposus at L5-S1 with indentation of the thecal sac and foraminal narrowing with nerve root impingement.
9. On 13 June 1995, Dr. McKinney restricted plaintiff to no lifting over five pounds and to avoid bending.
10. On 23 September 1995, plaintiff was involved in another automobile accident when a truck struck his car on a dirt road. Chiropractor Sykes treated plaintiff for right shoulder, mid back and right hip pain.
11. On 14 May 1996, plaintiff was released from Dr. Sykes' care with restrictions of no lifting, climbing, walking or standing in excess of fifty percent of his shift. He was also instructed to not engage in prolonged overhead work. Dr. Sykes gave plaintiff a full release from chiropractic care on 16 July 1996 for the September 1995 accident.
12. In January or February of 1996, plaintiff strained his neck while scrubbing the floor mats at Wendy's. Plaintiff received a workers' compensation settlement for this injury.
13. On 29 October 1996, plaintiff was seen by Dr. G. Frank Crowell of Triad Neurological Associates. A cervical MRI revealed cervical straightening and no large disc herniation in the cervical spine.
14. On 22 November 1996, plaintiff was seen by Dr. Charles Taft of Salem Orthopedics Sports Medicine. After reviewing Dr. Crowell's report, Dr. Taft advised that surgery was not recommended due to plaintiff's somatic complaints.
15. On 22 January 1997, after plaintiff began working at Achieva, he sought treatment at the emergency room of Davie County Hospital. Plaintiff reported a history of having upper back pain for seven days; however, he did not report any recent injury.
16. On 23 January 1997, plaintiff returned to Salem Orthopedics Sports Medicine at which time he reported a recurrence of back pain between his shoulder blades and low back which began on 13 January 1997. Dr. Gregg Cregan diagnosed plaintiff with a mild lumbar strain and possible thoracic strain. Plaintiff was provided with an out-of-work note excusing him from work for one week. Thereafter, plaintiff did not contact defendant regarding assignments available within his restrictions.
17. Plaintiff took Dr. Cregan's Disability Certificate to Addie Chu-Burks, defendant's Operations Supervisor. Plaintiff advised that he had arthritis in his back.
18. Dr. Cregan released plaintiff to return to regular duties on 10 March 1997. He noted that plaintiff "feels good now. He is back to the way he felt when he first went to work at the warehouse." The lumbar strain had resolved, and plaintiff retained no permanent partial impairment as a result of this injury.
19. On 8 October 1997, plaintiff was seen at Columbia Davis Medical Center Pain Clinic due to complaints of low back pain radiating into both legs. Dr. Bobby P. Kearney found plaintiff had experienced multiple industrial accidents and, in 1995, two automobile collisions. At that time, plaintiff reported that he had hurt his back pulling a pallet while working for defendant.
20. Plaintiff underwent epidural steroid injections and was released from the Pain Clinic on 6 November 1997. This treatment was not causally related to plaintiff's employment with defendant.
21. On 11 November 1997, plaintiff began working at Big Lots. Thereafter, he began employment at Bojangles in January 1998. Plaintiff earned $5.90 per hour for fifteen to forty hours of work per week.
22. After seeking medical treatment with Dr. Cregan on 23 January 1997, plaintiff asserted that he had injured his back while pulling a pallet of boxes bookcases. This is not accepted as credible.
23. The bookcases weighed between 280 to 300 pounds each. Nineteen boxes bookcases would be stacked on a pallet. The individual boxes bookcases were lifted by vacuum hoist. Loaded pallets were moved with a pallet jack.
24. Plaintiff testified that the forklift was broken, and he tried to move a loaded pallet with two pallet jacks.
25. Plaintiff had numerous experienced with workers' compensation injuries and was well aware of the reporting requirements for injuries. However, on 21 January 1997, plaintiff did not report any alleged injury to either the supervisor at Achieva or defendant-employer.
26. There were no incidents of the forklift being broken in January 1997 at Achieva. Therefore, plaintiff's testimony to the contrary is not accepted as credible.
***********
Based on the foregoing findings of fact, the Full Commission enters the following:
 CONCLUSION OF LAW
1. The credible evidence in the record suggests that plaintiff's pre-existing degenerative condition experienced a flare-up on or about 15 January 1997. Only after additional treatment was necessitated did plaintiff attempt to attribute his condition to his employment with defendant. Given plaintiff's prior experience in filing workers' compensation claims, he should have been well aware of the necessity of reporting any injury as soon as it occurred in order to obtain prompt treatment. Furthermore, plaintiff's assertions that a forklift was broken requiring him to pull the pallet, are not accepted as credible in light of the testimony of the production manager at Achieva. Therefore, plaintiff did not sustain an injury by accident or specific traumatic incident arising out of and in the course of the employment on 21 January 1997. Plaintiff's testimony to the contrary is not accepted as credible. N.C. Gen. Stat. § 97-2(6).
***********
Based upon the foregoing findings of fact and conclusion of law, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
***********
This the ___ day of April, 1999.
 S/_____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER
S/_____________ RENEE C. RIGGSBEE COMMISSIONER
DCS/jbd